FILED & JUDGMENT ENTERED
Steven T. Salata

January 26 2021

Clerk, U.S. Bankruptcy Court
Western District of North Carolina



J. Craig Whitley
US Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

| | |
|---|---|
| In re:<br><br>GENERATION ZERO GROUP, INC. and<br>FIND.COM URL HOLDING, LLC,<br><br>Debtors. | Case No.: 20-30319<br><br>(Jointly Administered)<br><br>Chapter 11 |

## ORDER GRANTING MOTION TO DISMISS AS BAD FAITH FILING

**THIS MATTER** is before the Court on certain secured creditors, by and through counsel and the collateral agent, Phoenix Restructuring, Inc.'s ("Movants") *Motion to Dismiss as Bad Faith Filing, or in the Alternative, Motion for Relief From the Automatic Stay* ("Motion to Dismiss") seeking dismissal of the jointly administered cases pursuant to Section 1112(b) of the Bankruptcy Code, or alternatively, relief from the automatic stay pursuant section 362(d) and Rule 4001 of the Bankruptcy Rules of Procedure. The Court agrees with the Movants and concludes that cause exists such that that these chapter 11 proceedings should be dismissed for the reasons explained below, including: 1) Richard Morrell was not authorized to file URL Holding into bankruptcy pursuant to its Operating Agreement or the Georgia code; and 2) the well-developed Fourth Circuit precedent in *Carolin Corp.* for objective bad faith and subjective

1

futility of the debtor. Therefore, the Court finds that dismissal is warranted, and the Motion to Dismiss is **GRANTED**.

In short, the evidence shows that the sole purpose of the Debtors' bankruptcy filings is to disrupt and harm the secured position of the Movants. This is evidenced by the filing of the Adversary Proceeding on the same date as the Petition Date in which the Debtors seek to recharacterize the debt of all claims held by the Movants. It is clear this proceeding was motivated not by an altruistic concern for unsecured creditors generally, but rather only to benefit one single insider/creditor—Richard Morrell ("Morrell")—the largest, with a purported general unsecured claim in the amount of $1,118,632.00. Morrell, largely for his own purposes, is attempting to invoke the bankruptcy laws, in a effort to recharacterize the secured debts of the noteholders to equity, so as to subordinate them to his own and thereby capitalize on whatever value there is in the primary asset of worth between the Debtors. Notwithstanding the satisfaction of the *Carolin* factors, Morrell has orchestrated these bankruptcy cases for the bad-faith purpose of unfairly attempting to vault his claim ahead of the secured claim of the Movants.

## ANALYSIS

On the request of a party and after notice and a hearing, the Court shall dismiss "a case under this chapter…. for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." 11 U.S.C. § 1112(b)(1). While "cause" is not specifically defined in section 1112, section 1112(b)(4) does provide a non-exhaustive list of factors that include "cause" which was included in the Motion to Dismiss. *See* 11 U.S.C. § 1112(b)(4).

### A. LACK OF AUTHORITY TO FILE ON BEHALF OF URL HOLDING

The Court must dismiss the bankruptcy petition filed on behalf of URL Holding, LLC ("URL Holding"), filed March 13, 2020 because the bankruptcy petition was not authorized by the active and authorized Directors of URL Holding. At the commencement of the present bankruptcy cases, Morrell executed the Voluntary Petition on behalf of URL Holdings as its President, not as a Director. It appears Morrell lacked the requisite authority needed to place URL Holding into bankruptcy because per URL Holding's

operating agreement ("Operating Agreement"), URL Holding is managed by its directors not a president. Morrell is not now, and was not at the time of filing, a director of URL Holding. Consequently, his authority to file the voluntary petition for URL was improper per the powers vested with in the Operating Agreement and Georgia law.

URL Holding is managed by managers as provided in both its operating agreement and in its articles of organization. At the time of the filing of Debtor's Bankruptcy Petition, the managers – referred to as Directors – of URL Holding were (and are today) Cynthia White and G. Thomas Lovelace (collectively, the "Directors (managers)"). The Directors (managers) of URL Holding never approved URL Holding's Bankruptcy Petition or authorized Generation Zero or Morrell to file a bankruptcy petition. The Operating Agreement does not authorize the President to file a bankruptcy petition. Consequently, the apparent authority of Morrell to file the bankruptcy on behalf of URL Holding is ineffective and insufficient. Because only the Directors (managers) of URL Holding, Cynthia White and Thomas Lovelace, had the authority to authorize a Bankruptcy Petition on its behalf, and they did not provide the requisite authority, the Court must dismiss the Bankruptcy Petition of URL Holding.

State law determines who has the authority to file a voluntary petition on behalf of the corporation. *In re Nica Holdings, Inc.,* 810 F.3d 781, 789 (11th Cir. 2015). If the petitioners lack authorization under state law, the bankruptcy court "has no alternative but to dismiss the petition." *Price v. Gurney*, 324 U.S. 100, 106, 65 S. Ct. 513, 89 L.Ed. 776 (1945). It is not enough that those who seek to speak for the corporation may have the right to obtain that authority. *Id.* Rather, they must have it at the time of the filing. *See Id.* at 106-07.

Similarly, with majority of jurisdictions, applicable Georgia law provides that "if the articles of organization provide that management of the limited liability company is vested in a manager or managers: (1) No member, acting solely in the capacity as a member, is an agent of the limited liability company." While Morrell is the President of URL Holding, he is not a Director (manager) by vested or apparent authority. O.C.G.A. § 14-11-301 His power as president does not include the power to file bankruptcy by the terms of the Operating Agreement or Georgia law. Neither Morrell nor Generation

3

Zero ever explicitly requested that the Directors (managers) of URL Holding approve bankruptcy or authorize Morrell to file bankruptcy on behalf of URL Holding. It is clear that the true Directors did not approve of the idea that bankruptcy was an effective means forward and did not authorize a bankruptcy petition.

The Debtors, or rather Morrell, argue that based on public policy considerations, contractual provisions in operating agreements that essentially prohibit a company's ability to file bankruptcy without a creditor's consent are void. *See In re Generation Zero Group, Inc. W.D.N.C. Case No. 20-30319, Debtor's Objection to Motion to Dismiss*; Doc. No. 59, p.12 The Debtors also contend that the provisions in URL Holding's Operating Agreement effectively gave the noteholders the right to block any bankruptcy filing in a way that functions as a pre-bankruptcy waiver of the right to file for bankruptcy and is, therefore, unenforceable as a matter of federal public policy. *See In re Generation Zero Group, Inc. W.D.N.C. Case No. 20-30319, Debtor's Objection to Motion to Dismiss*; Doc. No. 59, p.14 We need not explore these assertions. Whether the Debtor had the capacity to file for relief is a matter controlled by state law which does not default to the President of the LLC. *See In Re Wine Farms Inc.*, 94 B.R. 410 (Bankr. W.D. Va. 1988) Even if the existing Directors were conflicted, then the recourse would be for the members to select other directors. Furthermore, O.C.G.A. § 14-11-1107(j) provides that "A member of a limited liability company is not a proper party to a proceeding by or against a limited liability company, solely by reasons of being a member of the limited liability company." Morrell may have had the capacity to participate in acts necessary to the liquidation and winding up of URL Holdings as provided under state law. However, his status as the President or as a member of URL Holding does not include the power to file for bankruptcy by the terms of the Operating Agreement or O.C.G.A. and is not overruled by federal public policy.

B.  **CAUSE EXISTS TO DISMISS FOR BAD FAITH FILING**

Furthermore, through *Carolin*, the Fourth Circuit established that a bad faith filing may be dismissed for cause. *See Carolin Corp. v. Miller*, 886 F.2d 693, 699 (4th Cir. 1989) ("We agree, then,

4

that the broad language of § 1112(b) "supports the construction that a debtor's lack of 'good faith' may constitute cause for dismissal of a petition."). Bad faith is also shown if the purpose of a Chapter 11 debtor is to hold a single asset "hostage" in order to speculate that such asset may increase in value [leading] to recover[y of the] original investment at the creditor's risk." *Carolin Corp.*, 886 F.2d at 705 (4th Cir. 1989).

Carolin further established a two-part test when evaluating whether a bankruptcy filing is want of good faith. *Id*. at 701. Specifically, the Carolin Court stated that a movant must establish both <u>objective futility</u> and <u>subjective bad faith</u> in order to warrant dismissal. *Id.*

### I.    *The Reorganization Efforts of the Debtors Are <u>Objectively Futile</u>*

Under *Carolin,* the objective futility prong is to "ensure that there is embodied in the petition some relation to the statutory objective of resuscitating a financially troubled [debtor]." *In re SUD Properties, Inc.,* 462 BR 547 (Bankr. E.D.N.C. 2011) (*citing Carolin Corp.* 886 F.2d at 701 (4th Cir. 1989). The focus of the inquiry is whether there *truly is a going concern to preserve and the hope of rehabilitation*. *Id.* (*emphasis added*).

Based upon the Debtors' allegations in the Adversary Proceeding Complaint, the testimony at the 341 Meeting of Creditors of the Debtors' purported representative, and the Debtors filing in this case, the Court finds that: (i) the Debtors have no viability of reorganization, (ii) have no current employees with URL Holding never having employees and Generation Zero failing to have any employees since 2017, (iii) neither Debtor having realized any gross revenue since 2018, and (iv) Generation Zero is unable to trade publicly on the stock exchange as Morrell has failed to file the necessary reporting with the SEC.

An in-depth review of the financial affairs reveals that neither Debtor has any business much less any hope of reorganization on account of its lack of operations, employees, revenue and *de minimus* asset value. Listed on the respective *Summary of Assets*, Generation Zero states that its assets have a total value of $135.10 and URL Holding's assets hold a value of $0.00. Both Debtors are severally

5

encumbered by secured debt in the amount of $2,920,252.00 respectively with Generation Zero having an additional $2,263,698.00 in an unsecured debt.

Furthermore, for the operational years of 2018, 2019, and 2020 up through the petition date, both Debtors realized total gross revenue of $0.00. *See W.D.N.C. Case No. 20-30319, Statement of Financial Affairs* p. 47 of 101. *See W.D.N.C. Case No.20-30320; Statement of Financial Affairs* p. 44 of 59 [DOC. 20] Since the Petition Date and consistent with its pre-petition gross revenue, a review of the *Monthly Status Reports* filed in the respective case also reveals that the reorganization efforts of the Debtors are objectively futile. Since the Petition Date, the Debtor has failed to generate a scintilla of revenue. *See In re Generation Zero Group, Inc. W.D.N.C. Case No. 20-30319, Monthly Status Reports;* Doc. No. 33, p.2, Doc. No. 37, p. 2, Doc. No. 45, p.2, Doc. No. 55, p. 2. *See In re Find.com URL Holding, LLC, W.D.N.C. Case No. 20-30320; Monthly Status Reports;* Doc. No. 27, p. 2, Doc. No. 30, p. 2, Doc. No. 31, p. 2, Doc. No. 34, p. 2. Lastly, neither Debtor has ever filed any of the requisite annual tax returns as admitted in the Debtors' June Monthly Status Report. Based on the foregoing, and the Debtors' own records and financial reporting, there is simply no hope that these Debtors can be reorganized.

## II. *Debtors' Filing of the Voluntary Petition was completed with <u>Subjective Bad Faith</u>*

In addressing whether a bankruptcy case was filed with subjective bad faith, *Carolin* instructed Courts within the Fourth Circuit to consider the totality of the circumstances. *In re Castle Horizon Real Estate, LLC*, 2011 Bankr. LEXIS 657 (Bankr. E.D.N.C. 2011) (citing Carolin *Corp*. 886 F.2d at 701 (4th Cir. 1989)). In aiding the analysis, courts within the Fourth Circuit have enumerated seven factors to establish whether the reorganization process would cause hardship or delay to creditors: (1) Whether there is a single asset; (2) If assets are totally encumbered; (3) If there are few employees; (4) If cash flow is inadequate; (5) If there are only a few unsecured claims of relatively small amounts; (6) If the property is in foreclosure; and (7) When bankruptcy is the only way of forestalling loss of the property. *Id.* When applied to the evidence, there is a strong indication of subjective bad faith. These factors will

be addressed in turn.

It is undisputed that there is currently one primary asset of potential, if unknown, worth between the Debtors…the domain name of "Find.com" ("the "Domain Name"). Generation Zero scheduled a *de minimis* value towards its assets in the amount of $135.10 in a Wells Fargo bank account ending in 1933 but failed to attribute a value to the Domain Name. *See W.D.N.C. Case No. 20-30319, Schedule A/B*, p. 2 of 101 [DOC. No. 26]. URL scheduled a value of its assets of $0.00 and again failed to attribute a value to the Domain Name. *See W.D.N.C. Case No. 20-30320; Schedule A/B*, p. 2 of 59 [DOC. No. 20]. The Domain Name is totally encumbered. Based upon the Debtors' scheduled values, the assets in both estates have an aggregate value of $135.10 but have secured liens in the amount of $2,920,252.00. *See W.D.N.C. Case No. 20-30319, Summary* p. 1 of 101 and *Schedule D* p. 10 through p. 38 of 101 [DOC. No. 26]. *See W.D.N.C. Case No. 20-30320; Summary* p. 1 of 59 and *Schedule D* p. 10 through p. 38 of 59 [DOC. No. 20].

Based on the Debtor's own filings in these cases, it is undisputed that neither Debtor has any employees and has not had employees since late 2017. Neither Debtor filed a standard First Day Pre-Petition Case Wage Motion, evidencing this as well. At the 341 Meeting of Creditors, Morrell testified on behalf of the Debtors, that all W2 employees had been terminated as of late 2017.

It is undisputed that the Debtors have no cash flow whatsoever. This is revealed by the scheduled gross revenue of $0.00 for the years 2018, 2019 and 2020 up through the Petition Date. *See W.D.N.C. Case No. 20-30319, Statement of Financial Affairs* p. 47 of 101 [DOC. No. 26]. *See W.D.N.C. Case No. 20-30320; Statement of Financial Affairs* p. 44 of 59 [DOC. No. 20]. Simply put, this Debtor is administratively insolvent.

A large portion of the unsecured debt scheduled by the Debtors is debt furnished by insiders. Generation Zero scheduled an aggregate of $2,263,698.00. Morrell and his individual IRA claim an unsecured claim in the amount of $1,118,632.00, which is 52.4% of the general unsecured claim pool. *See W.D.N.C. Case No. 20-30319; Schedule E/F* p. 39-44 of 101 [DOC. No. 26]. URL Holding

7

scheduled $0.00 unsecured debt. *See W.D.N.C. Case No. 20-30320; Schedule E/F* p. 39 through 41 of 59 [DOC. No. 20].

While the Domain Name had not been in foreclosure, the Movants made demand on the Debtors to surrender the Domain Name and the collateral through joint foreclosure. Following the expiration of the last forbearance agreement which ended on January 2, 2017, the Movants began exercising all rights and remedies they have in the collateral and Domain Name. The Bankruptcy filing was clearly the only way to forestall the Movants in exercising their rights.

"The good faith standard also 'protects the jurisdictional integrity of the bankruptcy courts by rendering their powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those debtors and creditors with clean hands.'" *Id.* (*quoting In re Little Creek Dev. Co.*, 779 F.2d at 1072). Here, the Debtors have no real ability to reorganize per their own filings. They wish to use the bankruptcy forum to recharacterize the Movants perfected debt as equity to subordinate it to the general unsecured debt, of which the lion's share is owed to Morrell. In short, these cases are last shot efforts by Morrell to attack the secured creditors in order to collect on his debts. The *Carolin* factors as well as the non-exhaustive factors enumerated in section 1112(b)(4) fall in favor of the Movants.

## CONCLUSION

For the reasons explained herein, **IT IS HEREBY ORDERED** that the Movant's *Motion to Dismiss as Bad Faith Filing, or in the Alternative, Motion for Relief From the Automatic Stay* be **GRANTED** and these cases shall be dismissed.

**SO ORDERED.**

This Order has been signed electronically. The Judge's signature and Court's seal appear at the top of the Order.

United States Bankruptcy Court

8